Sullivan, ⎱
Jan. 4, 1916. ⎰

CLAYTON R. BUSWELL, *by his father and next friend,* LUCIUS A.

BUSWELL· v. EMERSON PAPER COMPANY.

CASE, for personal injuries. Trial by jury and verdict for the plaintiff. The plaintiff who was between six and seven years old went to the defendants' mill to visit his father and, in leaving, slipped

on some icy chips and fell into a carrier and sustained the injuries . complained of. Transferred by *Pike*, C. J., on the defendants' exception to the denial of their motion for a directed verdict, from the May term, 1915, of the superior court. The facts are stated sufficiently in the opinion.

*Hollis & Murchie (Mr. Alexander Murchie* orally), for the plaintiff.

*Martin & Howe* and *Frank H. Brown (Mr. Howe* orally), for the defendants.

YOUNG, J. If it is assumed, as the plaintiff contends, that he was on the defendants' premises with their knowledge and consent at the time the.accident happened, the test to determine whether they were in fault for his injury is to inquire whether the ordinary man with their knowledge of the situation and its dangers would have done anything to protect him from injury. The evidence relevant to this issue tends to prove that the defendants were operating a saw-mill in the village of Sunapee employing thirty or forty men. The plaintiff was a son of their foreman and was in the habit of visiting his father whenever he saw fit. On such occasions he would go to the part of the mill where his father happened to be. The rollway was at the northeast corner of the mill; south of that, the saw; west of that and just north of the track on which the carriage ran was a series of rolls; north of the rolls and three feet from them was a machine used to remove the bark from pulp wood; west of that, the carrier, used to convey the peeled wood into the trimming room at the southwest corner of the mill. This carrier was thirty inches from the floor at the barker but was high enough six feet further south for the carriage to pass under it; and still further south was high enough for a man to walk under it. When a person in the west end of the mill had occasion to go to the barker, the rollway or the board-saw, it was not unusual for him to walk under the south end of the carrier and turn north and walk beside it to the barker, then to turn east and walk in the space between the barker and the rolls to his destination. The plaintiff followed this course when he entered the mill and found his father at work near the board-saw, some eighteen or twenty feet east of the barker. At that time the men who operated the barker had completed the day's run and were preparing to clear the machine. The draft of the blower which

removed the shavings from the barker was not strong enough to re-move large pieces of bark and icy chips and it was the custom for the operator to remove such materials from the machine as soon as the day's run was finished. To do that it was necessary to remove the cover from a man-hole on the back of the machine and then to crawl in through the man-hole and push the chips into the space be-tween the machine and the rolls. As soon as this operation was completed, the chips were swept up and removed from the mill. The plaintiff, after visiting with his father for a few minutes, started to leave the mill as he entered it, but when he reached the barker he slipped, caught his hand in the carrier and sustained the injuries complained of. At that time one man was in the machine pushing the chips into the space between the machine and the rolls and the other was holding the light. Shortly before the accident, the plain-tiff's father sent the man, who was holding the light, to help the operator finish the day's run and clean the machine and he knew when he was talking to his son that the day's run was finished and that, if the men obeyed his orders, they were cleaning the machine at that time by pushing the icy chips into this space and that the chips would be removed from the mill within a short time.

The question, therefore, whether it can be found that the defend-ants were in fault, resolves itself into whether if the ordinary man knew a boy of six was in his mill and might be injured by a transitory danger incident to his method of conducting his business he would make the changes necessary to protect the boy from injury. In considering this question it is necessary to remember that the boy was visiting his father, that his father had charge of all the work at the mill and knew of the danger and that in the usual course of busi-ness it would be removed in a short time, for while he is not to be charged with his father's negligence, still, that he was visiting his father who had charge of the work in the mill and knew of the danger incident to walking in the space between the rolls and the barker while they were cleaning the machine and that the danger would be removed within a short time, are all facts the ordinary man would consider in deciding whether he would change his method of con-ducting his business in order that the boy might visit his father in safety. All fair-minded men must agree that the ordinary man is not accustomed to make such changes in order that strangers who have occasion to come on his premises for their own purposes may do so in safety and it is equally clear that he would not make an exception in the case of a boy of six if he was with his father in a

place of safety when the father knew all that any one could know of the danger and how to avoid it.   In short, it cannot be found that the defendants were in fault; consequently, the plaintiff cannot recover, if it is conceded that he was a licensee.

*Exception sustained: judgment for the defendants.*

All concurred.